JACOB JOHNSON FISH COMPANY, Respondent, vs. WACHS-MUTH LUMBER COMPANY, Appellant.

*October 28—November 15, 1910.*

*Negligence: Fires: Destruction of adjoining property: Evidence: Defective spark-arrester: Questions for jury: Insufficient verdict.*

1. In an action for destruction of plaintiff's property by fire originating on defendant's premises, assuming that defendant's refuse burner was equipped with reasonably safe appliances, it is *doubted* whether a finding by the jury that defendant was negligent in operating its sawmill and refuse burner at the time in question would be sustained by the evidence, which tended to show, among other things, that a high wind was blowing, that there had been a long period of drought, that there was a large quantity of lumber and of inflammable refuse on defendant's premises, separated however from the refuse burner by a clear space of two hundred feet, and that fires in the lumber yard were frequently started by sparks from the refuse burner.

2. The question whether the spark-arrester on defendant's refuse burner was defective should, upon the evidence, have been submitted to the jury.

3. A question submitted to the jury as to whether defendant was negligent "in failing to provide suitable means and appliances to prevent and put out fires" is *held* broad enough in its terms to include the inquiry whether a proper spark-arrester had been provided, although, after the question had been answered in the negative, the trial court stated that it had not been understood as referring to the spark-arrester and that the undisputed evidence was that the spark-arrester was defective.

4. Where it cannot be ascertained from the whole record what issues may have been considered by the jury in answering questions of a special verdict, such verdict is too uncertain, indefinite, and insufficient to sustain a judgment.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action to recover the value of the plaintiff's property which was destroyed by a fire communicated from the lumber yard of the defendant. The plaintiff claims that the fire originated through the defendant's negligence, and that defendant negligently permitted it to escape from its premises and spread to the plaintiff's property.

The defendant owned and operated a saw and planing mill at Bayfield and had a lumber yard on adjacent premises on which was stored a large quantity of lumber. A large quantity of slabs, edgings, sawdust, and waste material of an inflammable nature was strewn about the premises outside of an area of 200 feet around a refuse burner attached to the sawmill. The plaintiff was the owner of a fish house and docks with personal property therein, adjoining the defendant's lumber yard on the east. This property was destroyed by fire which on the afternoon of September 5, 1908, originated in the defendant's lumber yard and spread through the lumber piles and thence to the property of the plaintiff, destroying it. The defendant operated a refuse burner in connection with and near its sawmill, and the complaint alleges that in the light of the hazard and danger on the day in question the refuse burner was negligently operated; that an extraordinarily high, strong wind blowing from the southwest carried sparks and live coals over the mill yard, and, the season having been very dry for two months before the fire, the lumber and refuse on defendant's premises had become highly inflammable and unusual dangers from fire to adjoining property were thus created. It is further alleged that the refuse burner operated by the defendant was defective in construction, especially that the spark-arrester thereon was not reasonably safe, and also that the defendant failed to provide ample apparatus with which to extinguish fires which might start in its lumber yard or in waste materials in its mill yard, and to

prevent the escape and spread of such fire to adjoining property.

The refuse burner was operated in a clear space of about 200 feet about the burner. It had a spark-arrester with a mesh three sixteenths of an inch in diameter, which had been put on about nine months before the fire. There was evidence tending to show that the insurance companies required a clear space about a refuse burner, and that a clear space of about 200 feet met their requirements. There was evidence tending to show that on the day in question a very high wind was blowing, that it moderated somewhat about noon, but soon increased again, and that in the afternoon it was very strong for over an hour immediately preceding the fire. There was also evidence supporting the claim that fires in the lumber yard from sparks from the refuse burner were of frequent occurrence; that on the afternoon of the day preceding the fire which destroyed plaintiff's property one of the employees of the defendant had assisted in extinguishing some thirty-six fires which were started in the lumber yard by sparks from the refuse burner, and that on the day of the fire some twenty-odd fires in the yards had been extinguished. There was evidence tending to show that the spark-arrester on the refuse burner had a screen of a somewhat smaller mesh than was ordinarily used, that it was examined from the ground after the fire and no defect was found in it, and that the examination was so made that defects would have been discovered. Whether the fire in question was started by sparks or live coals which escaped from the refuse burner is contested.

The plaintiff's counsel requested that the following questions be inserted in the special verdict:

"1. Was it negligence on the part of the defendant to run its sawmill and use its refuse burner to burn waste matter which came therefrom on the 5th day of September, 1908?

"2. Did defendant exercise ordinary care in equipping its

refuse burner with, and maintaining, a suitable spark-arrester to prevent the escape of fire therefrom?

"3. Did defendant exercise ordinary care in providing and maintaining suitable means to prevent the escape of fire from its mill yard to plaintiff's property?

"4. If you answer question No. 1 by 'Yes' and questions No. 2 and 3 by 'No,' then were the facts found by such three answers the proximate cause of the burning and destruction of plaintiff's property?

"5. If you answer 'No' to question No. 4, were the facts found by your answers to one or two of said questions No. 1, 2, and 3, the proximate cause of the burning and destruction of plaintiff's property, and if so, which of them?

"6. If the court shall be of the opinion that the plaintiff is entitled to judgment, at what sum do you assess its damages?"

The court submitted to the jury the questions of the verdict which was returned, which was as follows:

"(1) Was there a want of ordinary care by defendant, *Wachsmuth Lumber Company,* in running its sawmill with the refuse burner attached, equipped, and surrounded as it was immediately before and at the time of said fire? A. Yes.

"(2) Was there a want of ordinary care by defendant in running said mill with the refuse burner and spark-arrester attached, equipped, and surrounded as aforesaid, at said times? A. Yes.

"(3) Was there a want of ordinary care by defendant in failing to provide suitable means and appliances to prevent and put out fires at said times? A. No.

"(4) If you answer questions 1, 2, and 3 'Yes,' were each and all of said acts of negligence the proximate cause of the destroying of plaintiff *Jacob Johnson Fish Company's* said property? A. No.

"(5) If you do not answer question 4 'Yes,' then write in the numbers of such acts of negligence only as you find, if any, were the proximate cause of the destruction of said property? A. One and two. Question (1) and question (2).

"(6) Was plaintiff guilty of any want of ordinary care which in any manner contributed proximately to his said damages? A. No.

"(7) What sum was plaintiff damaged by the destruction of plaintiff's property? *A.* Seven thousand dollars ($7,000)."

The court refused to change, as requested by the defendant, the answers to certain questions of the special verdict. Plaintiff's motion to change the amount of damages assessed from $7,000 to $10,000, on the ground that the undisputed evidence showed that such were the damages and that the jury had deducted the insurance obtained by the plaintiff from the actual value of the property destroyed in assessing the damages, was granted; and in granting plaintiff's motion for judgment on the verdict, when so corrected, the court found that the undisputed evidence showed that the spark-arrester on the defendant's refuse burner was defective and that its defective condition, by allowing sparks and coals to escape from the burner, especially in a season of drought and during high winds, greatly endangered property adjoining the defendant's mill site. The court also stated that the court was satisfied that the jury and counsel understood that question No. 3 referred to the means and appliances provided by the defendant for extinguishing fires and not to the spark-arrester or refuse burner. This is an appeal from the judgment so awarded.

*R. Sleight,* for the appellant.
*William F. Shea,* for the respondent.

SIEBECKER, J.    The defendant contends that, assuming that the refuse burner was equipped with reasonably safe appliances, the court erred in holding that the evidence was sufficient to show that the defendant was guilty of a want of ordinary care in running its sawmill and refuse burner on the day and at the time of the fire under the conditions then existing respecting the danger from fire on account of the inflammable material on its premises and the liability of its being ignited by sparks and of the fire being communicated by the high wind to the property of others in the immediate

vicinity.    The facts disclosed by the evidence on this subject leave it uncertain whether the facts and circumstances of the case are such that they will sustain such a finding by the jury. Since a new trial must be awarded and we cannot now know what the particulars of the evidence may be upon the retrial of the case as to this claim of negligence, we do not regard it necessary to finally decide the case upon this issue, but we deem it appropriate to say that it is doubtful whether the evidence in the record tends to show that the defendant was guilty of a want of ordinary care in operating its sawmill and refuse burner, if provided with reasonably safe appliances, under the surrounding conditions as shown by the record.

The court in its order for judgment declared that it appeared from the undisputed evidence that the plaintiff's damages were in excess of $10,000; that the spark-arrester of defendant's refuse burner was defective; and that question No. 3 of the verdict was understood by the court, the jury, and counsel not to have any reference to the spark-arrester. There is evidence to the effect that the spark-arrester was equipped with a new three-sixteenths inch mesh of proper material, that it would not become defective from use in the length of time it had been used, and that several witnesses examined it immediately after the fire and found it in good condition.    This evidence was rebutted by opinion evidence to the effect that sparks emitted from such an arrester in good condition of repair would not live to cause a fire beyond a 200-foot area around the refuse burner.    It also appears that many fires were set outside of this area during the preceding day and on the day of the fire, which may be found to have been caused by sparks emitted from this spark-arrester. This conflicting state of the evidence made the inquiry regarding the alleged defect of the spark-arrester an appropriate one for the jury and it should have been submitted to them for determination.

An examination of the verdict discloses uncertainties re-

garding this inquiry and its submission to the jury.    The instructions given to the jury in connection with questions 1 and 2 gave them no directions that this inquiry, as to the proper condition of the spark-arrester, was included in the questions submitted to them.    Question 3, as framed, contains language which in its natural meaning is broad enough to embrace the inquiry as to whether the defendant provided a proper and suitable spark-arrester, but the instructions thereon do not refer to such an inquiry, and the declaration of the court that it was defective as matter of law repudiates the idea that this phase of the defendant's negligence was passed on by the jury.    From the whole record we cannot ascertain what issues may have been considered by the jury in framing their answers to the questions in the verdict, and this renders it too uncertain, indefinite, and insufficient to sustain the judgment awarded.

We are also of the opinion that question 3 is not restricted by its phraseology to the means and appliances provided for extinguishing fires in the mill yard after ignition of the inflammable materials, and to prevent escape thereof to adjoining property.

Since there must be a new trial ordered on account of the errors noted, and since the other questions raised will probably not arise upon a new trial of the action, we deem it unnecessary to consider them on this appeal.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.